[Civ. No. 2459.  First Appellate District, Division One.—December 5, 1918.]

## G. W. LANGAN, Appellant, v. MARIPOSA COMMERCIAL AND MINING COMPANY (a Corporation), Respondent.

CONTRACT—PURCHASE OF MINING PROPERTY—DAMAGES FOR BREACH—INSUFFICIENT OFFER OF PERFORMANCE—NONSUIT.—In this action for damages for breach of a contract to purchase mining property it is held that a nonsuit was properly granted on the ground that the evidence failed to show either a sufficient offer to perform the contract which was the basis of the action, or readiness or ability to perform the conditions thereof.

ID.—OFFER OF PERFORMANCE—GOOD FAITH—ABILITY TO PERFORM.—An offer of performance must be made in good faith and in such manner as is most likely under the circumstances to benefit the creditor, and under section 1495 of the Civil Code an offer to perform, whether made in writing or orally, is of no effect if the person making it is not at the time able to perform according to the offer.

APPEAL from a judgment of the Superior Court of Alameda County.  William H. Waste, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Langan & Mendenhall, Chapman & Trefethen and R. H. Countryman for Appellant.

Charles W. Slack and Curtis H. Lindley for Respondent.

BEASLY, J., *pro tem.*—This is an appeal by plaintiff from a judgment entered pursuant to an order granting defendant's motion for a nonsuit. Among the grounds of the motion was that of failure to show either a sufficient offer to perform the contract which was the basis of the action, or readiness or ability to perform the conditions thereof. The contract declared upon related to the purchase by William H. Cook and S. Webber Parker, through their agent, Gen. William H. H. Hart, of certain property of the defendant known as the "Mariposa Grant" and situated in Mariposa County, California. The proposed deal fell through and Cook and Webber assigned their rights under the contract to the plaintiff Langan, who began this action for damages for breach of the contract.

The main reliance of the plaintiff was upon an allegation that Cook and Parker having performed all the conditions of the contract binding upon them, the defendant repudiated the contract and refused to perform. The record is voluminous, the evidence consisting of innumerable letters, lengthy documents, and considerable oral testimony. Much space is devoted in the briefs to arguments upon nice questions of technical pleading, mainly directed to a variance which defendant's counsel insist existed between the third amended complaint, on which the case was tried, and the proofs offered at the trial.

While we have not before us the reasons of the trial court for granting the nonsuit, it seems to us that the order was based upon very simple questions of law and fact which must, on account of the condition of the record and the impossibility of rehearsing all the evidence, be rather briefly stated here.

On the twenty-sixth day of February, 1913, General Hart wrote the defendant a letter requesting the terms of sale of the Mariposa Grant. George E. Webber, president of the defendant corporation, replied on February 27, 1913, offering on behalf of the company to sell the property for four hundred thousand dollars, five thousand dollars of which was to be paid on the fifteenth day of March, 1913, in cash, and ninety-five thousand dollars additional on June 15, 1913, also in money, and the balance of the purchase price of three hundred thousand dollars was to be paid in three equal annual payments commencing June 15, 1914. Among the other conditions of

the offer to sell included in this letter, were the following:
"It is further understood that the purchasers are to give to
the company any protection which may be suggested by Mr.
Henney Jennings or Judge Curtis H. Lindley, counsel for the
company, covering the period of the option and the comple-
tion of the payments.   In the event of your deciding to exer-
cise your option, a definite agreement under the general terms
outlined in this letter will be entered into between the con-
tracting parties."

It may be said in passing that the property was mining
property and that Judge Lindley was the expert mining lawyer
for the company.   On March 12, 1913, the time to make the
initial five thousand dollar payment was extended to the
thirty-first day of March, 1913, and on the last-named date, the
five thousand dollars was paid, and in the correspondence
accompanying the payment it was suggested that a formal con-
tract of purchase would be drafted with the approval of Mr.
Jennings and Judge Lindley, during the ninety days' option
period, which would, as provided in this correspondence, ex-
pire on the fifteenth day of June, 1913.   In the letters which
passed at this time between the parties it was provided that the
remaining ninety-five thousand dollars of the one hundred
thousand dollars cash payment should be paid on or before
June 15, 1913.   On May 7, 1913, a tentative agreement was
delivered to General Hart from Judge Lindley's office and in
this agreement, various safeguards were thrown about the
mining property, which formed apparently the valuable por-
tion of the subject matter of the transaction.   Accompanying
this tentative agreement was an extension of the time within
which to make the ninety-five thousand dollar payment, to
July 15, 1913.   On June 5, 1913, General Hart wrote Judge
Lindley directing him to prepare the contract and papers in
accordance with the latter's letter of May 29th.   On June 9,
1913, Judge Lindley wrote General Hart inclosing a final
draft of the agreement option, as it was called, with a note
and mortgage attached thereto, and the request that General
Hart examine these and let Judge Lindley know at his earliest
convenience that they were in due form.   The receipt of this
letter and the inclosed documents was acknowledged on June
9, 1913, by General Hart in writing.   No criticism of the
papers and no objection to any of the terms thereof was made
until July 5, 1913, when General Hart wrote Judge Lindley

acknowledging the receipt of the proposed final draft of the agreement. It will be noted that the time for the performance of the agreement was to expire less than a week later, namely on the fifteenth day of July. There was some oral testimony to the effect that General Hart had previously expressed dissatisfaction with these papers in a cursory conversation, but the correspondence between Judge Lindley and General Hart is so clear upon this subject that only one finding is possible, namely, that no objection had been made until that contained in the letter from General Hart to Judge Lindley, posted on July 5th. In this letter of July 5th General Hart asked for an extension of time upon the contract, and on July 8th Judge Lindley replied to the criticism to the effect that the papers were drawn in conformity with the agreement between himself and General Hart and in accordance with the correspondence of the parties and declined to recommend any extension of time. On July 8th General Hart again wrote Judge Lindley asking for further time.

The vital events in the case occurred on July 15th. On that day Cook and Hart visited the office of the defendant company. Without reciting the testimony of the various parties, it is clear beyond controversy, in spite of some oral evidence to the contrary, that their sole object in making this call was to procure an extension of time; and it is also clear from the testimony of Cook himself that neither Cook nor Parker was either ready or able to pay the ninety-five thousand dollars and thus perform the conditions of the contract. Much discussion is found in the briefs as to whether the agreement contained in the various letters and papers that passed between the parties was an option to purchase or a contract to purchase. Whether the agreement is called the one or the other, the time limit therein for performance was the fifteenth day of July. From the evidence in this case, no *bona fide* offer of performance was made on that day, or, in fact, at any time, by Cook and Parker, or by anyone on their behalf. They did not have the ninety-five thousand dollars, as is clear from the testimony of Cook himself, the only testimony on that subject in the record.

After an examination of the bulky volume of evidence, we are forced to the conclusion that the trial court could have reached no other conclusion in this case than this, namely: That there was no offer to perform on the part of Cook and

Parker; that they did not have the money with which to perform, and that if—as some of the oral evidence in the case indicates—they did offer verbally to perform this contract, the offer was not made in good faith.   We are not overlooking the fact that this was a motion for nonsuit, nor the rule governing such motions to the effect that the testimony must be viewed most favorably for the plaintiff.   But in our estimate of this evidence, even taking the most charitable view possible in favor of plaintiff, it shows conclusively that the only real object of Hart and Cook in their visit to the office of the defendant company on the fifteenth day of July was to obtain an extension of time; that they were not prepared in any way to conclude the deal by paying the ninety-five thousand dollars, and that they had no expectation of doing so.   This being so, the motion for nonsuit was properly granted; for an offer of performance must be made in good faith and in such manner as is most likely under the circumstances to benefit the creditor (Civ. Code, sec. 1493; *Doak* v. *Bruson,* 152 Cal. 17, [91 Pac. 1001]), and under section 1495 of the Civil Code, an offer to perform, whether made in writing or orally, is of no effect if the person making it is not at the time able to perform according to the offer.   So that, conceding that the oral evidence of some of the witnesses was to the effect that there was an offer to perform—directly contradicted by Cook, the only principal who testified on the subject or who was present at the interview—still, under the rules of law above stated, it appearing that Cook and Parker were not able to perform, and it also appearing clearly from the evidence that the offer, if made, was not made in good faith, the ruling of the trial court on the motion for nonsuit must be sustained.

The plaintiff also complains of numerous rulings made during the trial excluding evidence offered by him.   So far as we are able to discern, none of this evidence could possibly have changed the decision of the court on the motion for nonsuit.

The judgment is affirmed.

Lennon, P. J., and Sturtevant, J., *pro tem.,* concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court February 3, 1919.

All the Justices concurred.